Mr. Brennan. Thank you. Attorney Svoboda, your honors, good morning. My name is Patrick Brennan. I'm familiar with the Seventh Circuit. I'm from Milwaukee, Wisconsin. We didn't have a team in the NCAA Tournament this year. I understand you do. I'm sorry it didn't go well for you. I represent John Nelson, whom I will refer to as Riley. It's John R. Nelson. Only so as to distinguish him from... Well, I went to Madison undergrad, so I had a team in the race. That's correct. So did I, and so do I. And I went to Marquette for about a good year. Don't forget the bison. The bison was solid. They didn't make it all the way, but they made a good shot. They sure did, and they're to be commended for that. As I was saying, I will refer to the claimant as Riley Nelson, just so as to distinguish him from his father, who has the same name, John Nelson, and was a witness at the trial that was conducted in this case. This is, as your honors can discern from the briefs that were submitted, a fairly simple case. It is a case where we have contended that the evidence adduced at trial in this case, the trial that occurred back in August of 2012, was insufficient to establish a substantial connection between the money that was seized from Mr. Nelson's RV and a drug trafficking offense. This case is, in my estimation, different perhaps than many others which come before your honors, in that it was conceded by the government prior to the trial in this case that the money seized was absolutely legitimate in terms of its source, in terms of its origin, and not only was that concession made, but just so as to leave nothing to chance at the trial, the claimant introduced evidence, unimpeached, uncontroverted, credible evidence, to establish the legitimacy of the source of those funds. So the only issue here, different than any other case I was able to locate, is not whether there's even any shred of doubt about the legitimacy of the money, it's whether there is some basis to conclude that this money was shown by the government at trial by proponents of the evidence, intended to be used to facilitate a drug trafficking crime. The facts in the case are essentially undisputed, that is, we have a young man traveling from, through Nebraska, heading east, driving his parents' RV, recreational vehicle, from Colorado to where he lives and they live in a suburb of Milwaukee, Wisconsin. We have a benign reason for a traffic stop, I think it's following too closely, and then there is interaction as between a state trooper, Trooper Pelster, and Mr. Nelson. During the course of that exchange, Trooper Pelster asks for permission to search the RV, and is afforded permission to search the RV, and during the search of that RV, a knapsack is located, importantly, in plain view, not concealed, not in any way, shape, or form, made difficult to see. In plain view, a knapsack is found, and in that knapsack is $50,000. Significantly, Mr. Nelson, when asked about the money, says yes, there is $50,000 in that knapsack, so he's not ambivalent or uncertain about the amount of money or its presence there, nor is he ambivalent about explaining to Trooper Pelster what the source of that money is. He says, this is my life savings. I am taking my life savings, or took my life savings, to the state of Colorado, because it was my intent to scope that area out to see if it's a place that I want to live. There was testimony offered into evidence at trial from his father, which essentially correlated and corresponded and corroborated all of that, which was, yes, my wife and I gave our son permission to drive our RV with his two dogs out to the state of Colorado because he was contemplating relocating there. Now, I think another significant fact that merits consideration and some degree of attention is this. The theory here, and I'll get to that in a second, the theory which somehow correlates this money with a supposed drug trafficking offense is that Mr. Nelson went from Milwaukee to Colorado for the purpose of acquiring controlled substance. That's the theory that the government would have you believe supports the notion that this is a forfeitable commodity. What I would ask your honors to apply some measure of common sense to in evaluating some of the facts and circumstances here is the presence of a safe that is also found proximate to where the knapsack, the unconcealed knapsack, with all of the currency in it is. What's significant about that safe that's found is that it contains all of or many of Riley Nelson's personal papers, personal effects. So, if a fellow is in the midst of making a run out to Colorado to turn around and bring back product to distribute in Wisconsin, as the government would have you believe, that's with him. Wouldn't that more readily tie into, wouldn't that more readily be explainable in the context of what both Riley Nelson and his father said was his purpose in going there, which was to seek out and potentially set up a new life for himself. There is a series of what I would offer as suppositions. There is a theory propounded by Trooper Pelster during the course of the trial, and that theory is that Mr. Nelson took this money to Colorado to participate in, and this is a quote from Trooper Pelster's testimony, a planned event. And I'm not in any way, shape, or form questioning Trooper Pelster's qualifications. He's an experienced law enforcement officer. He's entitled to formulate opinions and suppositions based on his experience as a law enforcement officer. But he chose to describe what he thought Riley Nelson went to Colorado to engage in as a planned event. What's interesting about that though, your honors, is that there was absolutely no evidence found such as would establish the existence of this intended planned event. By that I mean you find nothing by way of large amounts of marijuana in the car. You find no fuzz buster or radar detector or any other item that would attempt or that would assist in warding off police contact. You don't find an RV that has trap compartments or concealment areas or anything like that. You don't find firearms. You don't find scales or other weighing materials. And significantly Trooper Pelster also takes from Riley Nelson his Blackberry and has access to that event. And Riley Nelson comes into the clutches of law enforcement on the way immediately after that supposed failed planned event. Why is there no evidence of it in the form of a text or an email or any other form of communication? There isn't. There quite frankly is not. The district court says a small amount of marijuana was in the RV. How much was it? I believe off the top of my head, your honor, I believe it was about nine grams. Maybe off by two grams or thereabouts. Clearly a third of an ounce or so. Exactly. Clearly consistent with personal use and that was never in dispute. Was it near the money? The district court says with the currency. But I don't know what with means. It was in the knapsack. It was in relative close proximity. Yes, it was as far as I recall. So what we're left now, let me interrupt you because I did want to listen to all the facts you gave. It's very interesting case because as I understand it, the district court finds the trooper credible and he certainly finds the father credible. Did Riley testify? He did. Okay, now she doesn't make a finding that he's not credible, but implicitly the finding is not credible. The whole her her whole eight pages here, right? The judge's to some extent, although she finds his explanation as to why it was he exhibited nervousness to be credible because both he and of course that's bolstered by the father. Let me get the point because your time is running away from you. The only thing that she really decides is this purpose for the trip. It's what she calls it. Is that subject to a preponderance of the evidence finding about the purpose of the trip? I believe it is. I believe it is your honors. I think that also and consistent with that same question, I don't think it's appropriate to voice onto a claimant the burden of disproving this sort of inchoate and unparticularized suspicion on the part of a law enforcement person, irrespective of how experienced that law enforcement person may be. And frankly, I think that's precisely what happened in this instance. A better question is the finding of the purpose of the trip and you know what she says on page eight. Is that finding subject to clearly erroneous review? Is it a finding of fact that we have to defer to unless it's clearly erroneous? I understand your honors a question because the standard of review is two part findings of fact clearly erroneous. What those findings of facts suggest de novo and I'm not certain which of those two applies here. Counsel, you think it's mixed? I think it is. Well that's what 124 700 held mixed and therefore de novo. Right. And we reversed another magistrate judge who in that case found for the claimants. So it would seem to me if, if the purpose of the trip finding whatever it was is the only basis for for a conclusion of substantial connection, then it's de novo. I would, I would agree with that. Yeah, I would, I should think you would. Okay. Would you like me to continue or did I, am I reserving five minutes? You're eating into that as long as yellow lights on. I'm sorry. Then if it is okay with you, I'm going to sit now and I'll just reserve whatever few minutes I have for my next bit. Thank you very much. Thank you. Ms. Swoboda. Morning, your honors. May it please the court, Mr. Brennan, I'm Nancy Swoboda appearing for the United States in this matter. Judge Benton, I was flipping through the transcript and you asked Mr. Brennan about the amount of marijuana and where found. I found a couple places, sir. I'd just like to point that out. Thank you. Yes, sir. Page 42, money is found in backpack, a glass marijuana pipe, a grinder with high grade marijuana inside. Then also three high times magazine, sir, that's at 8, 9, and 10. And then later on, sir, on page 62, the grinder had 2.7 grams of marijuana in it and there was a little, there was a clarification of a 17 gram amount. So just under 20 grams total, sir. Yes, judge. While you're worried about me a little bit, would you address the question we got around to here at the end? Because I think that is the key to the case, at least in my mind. And sir, will you, is that- Yes, sure. The question is, as I understand page eight, the judge comes down to ruling that the question here is the purpose for the trip. And she finds based on totality of the information that took life savings, additional help from father, to Colorado to engage in drug sales and to return to Wisconsin with a supply to distribute for profit. First of all, is it a finding of fact? Is it a conclusion? Is it a mixed question? Is it subject clearly erroneous review? And is it subject to preponderance and after that? Go ahead. In my opinion, sir, it is subject to preponderance of the evidence. It's a finding of fact. It's subject to clearly erroneous review. Her ultimate- How can you say that in light of the case that you're principally relying on? Well, my answer to that- 124,700, I just read it- Yes, sir. Last night. You want me to find the language? No, sir. We clearly say it's de novo on the critical issue. But, sir, what I was just going to just finish that statement and say, then her conclusion that that provides the substantial connection between the drug trafficking and the defendant currency or the money, that's the de novo review that I submit this court should go through. Did I answer your questions, Judge Benton? Sure, but take as long as you need, because I think that the facts here are relatively agreed to- Yes, sir. When the magistrate judge goes out, shouldn't say it, when the judge goes out of her way to credit the father, credit the- She even credits, the other counsel is correct, she even credits Riley himself a lot. Yes, Judge. Yes, Judge. So I think that is, when you put all these facts together, but go ahead and present your argument. We kind of preempted you. Well, sir- I must say, let me just frame that. Other than this, what was in the backpack with the dollars, I find from what I haven't read, I haven't read the trial record, but from reading the briefs and the district court's opinion, I see no objective evidence of substantial connection other than a good trooper's belief, opinion, supposition, theory, or whatever. Nothing. What do you have? Why am I wrong in reading the record that way? I submit your honor that what I have is, I'd ask you to look at the way Judge Zwart- I want the objective evidence that you or whoever tried the case for the government- I did, sir. Put in, other than Felser's plausible theory as to what a lot of bad people would have been doing in this circumstance. I'll give it to you, sir. Large sum of cash, rubber banded bundles, evidence that that is the way drug money is packaged. Who, what, his testimony or whatever? Yes, sir. Would you stop on the rubber banded, and I'm sorry, tell me how it was rubber banded. I don't know the bare facts of this case. Sir, I think I tried to get that out of the trooper in the testimony, and all I remember is rubber banded bundles. I apologize. No, that's all there is. I don't think it was one big rubber banded bundle. I think it was plural, sir. I can kind of see the photograph. I'm sorry, Judge, I just can't go over it. Oh, is there a photograph in the record of the money? Yes, sir. Okay, great. Proceed. Next, Judge Loken, evidence of concealment. It was in a plastic grocery sack, tucked inside the backpack. Next, coming from a transportation hub. In a plastic grocery sack? Yes, Judge. Oh, should it just have been loose $20 bills or what? Well, Judge- I mean, if it had been loose $20 bills, that would have been the basis for the theory. Judge, those are the phrases, those are the types of facts that this circuit has laid out in prior forfeiture cases. Now, okay, the case that you cite and rely on in this magistrate, 124,700, I cannot find a case further away from this one than that. And that was a two to one decision and it was full of the most suspicious circumstances possible, none of which are present here. Judge, here's the way I read, if I may, here's the way I read $124,700. This court said, bundling and concealment of large amounts of currency, comma, together with other suspicious circumstances, comma, provides the substantial connection between the money and the drug traffic. But there were no other circumstances, that's my point. They were all explained away and found to be explained away. No, sir. With all due respect, Your Honor, no, sir. I agree. I agree. Judge Zwart, forgive me, kind of talked out of both sides of her mouth in terms of Riley Nelson's, she says, I saw on the video that he looked very nervous. Paraphrasing, forgive me. And then later on, she says, the man's been on medication for quite a while. He's 500 miles away from home in the presence of a law enforcement officer. I can kind of see how he was nervous. But Judge also, so that's where she talks about Riley. But she also specifically talks about how Riley was untruthful and dishonest with Trooper Pelster. Do you have any illegal drugs in the vehicle? No, I don't. Turns out to have marijuana. Wait a minute. Do you, do you? He didn't, he had a possession quantity. And as soon as the trooper said, you know, I wouldn't do any more than give a citation. Now I'm going, taking this from the briefs. Then he said, oh, okay, yes, that's what's in there. And, and then, and then that's a gotcha. And Pelster says, now I can search the vehicle. Right. If I got it wrong. Nope. That's right, Judge. That's right, Judge. But you were asking me. Well, what other dishonesty was there? Pardon me? Well, now we have the snowboarding incident or. Not going to Colorado to snowboard. No drug criminal history. No illegal drugs in the RV. Untruthfulness. I thought he just had a, what was his prior? Was it a DUI or something? He, he distanced himself from his drug history. He had a drug possession, but he told, Judge, he told Trooper Elster that it was a disorderly conduct or something like that. Okay. So, so, you know, he got himself arrested. Judge, you asked where I try to, where I'm trying to. I just, you know, I, I don't, the, the, the money's going the wrong way. It's all explained. There's a perfectly valid reason. There's the safe with all the personal effects. Why would you do that? If you were just doing a quick trip to get 50,000 worth of drugs, then you'd be taking the cash westbound. She also notes that he provided untruthful testimony. If, if moving, she says, if moving to Colorado was the real reason for the trip, then why hide it? And the only reason he changed his story is because then the money's found. So, and you're right. If it's all explained, Judge, if, if we look at it the way you're saying, Judge Loken, it's all explained. The bottom line is she didn't believe the explanation. But she believed the father. She believed, you know, you were talking to the, uh, uh, lawyers about jury instructions earlier, and, you know, even, uh, the Eighth Circuit's jury instructions tell the finder of fact. You can believe some, all, pieces, none of the witness's testimony. Well, it seems to me that that's what Judge Ward did. And the bottom line is she said, she says, I believe the dad, Nelson, so forgive me, but the, but ultimately the father can only testify to what Riley told him. And she did not believe Riley was telling the truth. She didn't believe Riley was telling the truth because he wasn't truthful throughout his, uh, contact with Trooper Pelster. He was, uh, nervous throughout his contact with Trooper Pelster. And he, she saw that as your... Which would, which was explained by his medical history. Right? Counsel, let me try a little different approach. Same thing, really, though. Uh, the $117,920, I think is the closest case. Okay. It's one you were counseling, I noticed. Uh, uh, two... Is that the man, that Sassoon man, Judge? Yes. Yes. Sassoon is the underlying for the $117,920. Uh, I think that's the closest case to this case. Tell me how it supports you. Well, the facts, first of all, money found hidden beneath clothing in a plastic sack and a piece of luggage in the trunk of Susan's car. Now, before we go any further, the dog smelled that money and smelled marijuana on the money, right? Isn't that this case? Now, Judge, when you just said the word this, are you talking about... No, no, isn't that, I'm sorry, isn't that the Sassoon case? In Sassoon, didn't they smell the, the... I thought that was in here. Um, Your Honor, I apologize. I do not remember if in the Sassoon case there was... Proceed, proceed. I interrupted your factors. Keep talking. Okay. So, uh, and then, uh, there's evidence of concealment. The, uh, the Susan's money was bundled in rubber bands, enclosed in a plastic sack, and hidden beneath clothing in a duffel bag. It's exactly what's happening in this case, except for the fact there was no duffel bag. It was his backpack. Uh, there was no discretionary sniff, Judge Benton, in the case that's before us right now. Uh, so, I just can't speak to if there was a, a discretionary sniff on 117-920. If you're going to carry 50,000 cash on, for a substantial period of distance on our interstate free, when, when would you not conceal it? What, what idiot would not hide it from obvious, from plain view? No one. Judge, I'm just pointing out what the facts are and priorities. Yeah, I know. But I mean, I think, I think, you know, Pelser, Pelser had a, had a strong theory, a strong belief. But I think that's all you proved. I respectfully submit, Your Honor, that if it, no doubt about what you're saying in terms of, that's his theory. Planned event, as Mr. Brennan pointed out, planned event. But what lends credence to the planned event is Ms. Riley Nelson's, son's, during his contact with Trooper Pelser, is his caginess, his evasiveness, and his outright lying to the Trooper, sir. And what Judge Zwart says is, that's going to lean in favor of not believing Riley. Why would I believe someone who changes his story only after he gets caught? At one point in her opinion, she calls that the hallmark of an, of an, of an untruthful statement. Now, in, in the Nelson case, the present case. Thank you. There are no scales, right? No scales were found? I believe that's correct, sir. And what about bags, Ziploc bags, compactor bags, and air freshener? I'm, I'm going, I'm in Sassoon, by the way, so you know what I'm really getting this list from. None of those in this case, right? No, sir. I believe that is correct. There were none of those in this case, sir. No larger Ziploc bags, because the marijuana that we just talked about, Judge, was obviously a smaller amount, what we, what we call personal use. And is there a dog in the Nelson case? There's not, is there? Two dogs, sir. Pitbulls. No, I'm sorry. A, a dog, marijuana dog, search, smell. Canine sniff. Canine sniff, there you go. In the Soussant? Nope. In the Nelson case. In Nelson. Sorry, Judge. No, no canine sniff. Okay. In the Nelson case. I don't want to impugn our wonderful citizens of the Tenth Circuit, but my understanding of Colorado and Denver in the last few years is that anyone with $50,000 cash could go out there from anywhere, from anywhere east of there and come home with marijuana. But isn't Judge Ward's statement, isn't Judge Ward's opinion saying, why not just say that then? When? When he's talking to, when he's talking to the trooper and, uh. To say what, to say what when? Well, in other words, just be truthful. Why didn't Riley tell the, tell the trooper that? Tell, tell him, why didn't he tell him that I was, I went out to find marijuana and I couldn't find any? Well, that's assuming, you're assuming the Pelser's theory is correct. Isn't that what you just said? Pardon? Isn't that what you just said? I said, if, if that had been the planned event, my understanding of life in, in Colorado these days is that anyone could have pulled it off. Well, that's these days, Judge Loken, really. This happened in 09. It was not that long ago. Well, it wasn't legal like it is now. The economy was worse. So it probably, there probably would have been easier to find a well, a willing seller. But it sure wasn't the way it is now, sir. I mean, it's. Well, it wasn't legalized, but, but it was that it's known to, by the government. It was Pelser's whole point. That's a source city. And he's traveling. He has the, he has the temerity to live in a, a receptor city. Judge Loken, I are to all of you. I submit the Judge Zwart's opinion falls squarely within what you have told district courts to do in looking at the forfeiture cases. Bundling and concealment of large amounts of money together with other circumstances provides the substantial connection between money and the, and the drug traffic. Would you agree that the Supreme Court's strong emphasis on totality of the circumstances in Fourth Amendment cases should apply it to this, this inquiry? Yes, sir. Yes, sir. I would think so. Yes, sir. Okay. And we're talking about that. I, you know, we're, we're debating. Yes. What the totality was. Yeah. Yeah. Because the Fourth and Fifth Amendment apply to civil forfeiture cases. You bet, Judge. Your Honors, my red light's on. Unless you have any other questions, I'll sit down. Thank you, Your Honors. I do ask you to affirm the decision of the Magistrate Judge. Very good. Is Mr. Brennan here? Mr. Brennan has a little over two minutes left. Thank you again. It's never easy for an Irish guy to only speak for two minutes, but I'm going to do my best. First of all, Your Honors, Your Honors, with respect. That was a week ago. With respect to the Susan case, the 117-920, this is factually distinguishable. In that case, there was a digital scale. There were trash compactor bags, Ziploc bags. The bags smelled like raw marijuana. The claimant in that case did not consent to the search. There was some story about how the money came to be there, whether his mom brought it from Iran. There was an issue about source that is not present here. He said he had no drugs or large amounts of currency within that vehicle. That didn't happen here. Mr. Nelson readily acknowledged that he had a significant amount of money in the car. Sassoon lied to the officer about not having money. The materials in the bags were packaged in such a way as to conceal them from detection. There was a positive dog alert on the currency. In short, all of the facts that aren't present here were present there, and that's the case that the government principally relies upon. Your Honors, I would leave you with a quote from a slightly older case, the Johnson case, an Eighth Circuit case from 1992. The dissent wherein the following is stated. The government must establish a connection between the money and dealing in drugs. As Judge Hunter so cogently reasoned, that connection does not exist except as a matter of imagination. And I'm sorry, that's precisely what we're confronted with in this case. I thank you very much for your time. I thank you very much for the opportunity to argue a case in front of you. It's been my great honor and my great privilege. Thank you very much. Thank you, Counsel. The case has been well briefed and very effectively argued, and strongly argued, as it should be. And we will take it under advisement. Thank you very much.